**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**WILLIE HAMILTON,**                          Chapter 13
        Debtor                                Case No. 04-10133-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**WILLIE HAMILTON**
        Plaintiff
v.                                            Adv. P. No. 07-1060

**RALPH APPOLON d/b/a**
**PROVIDENCE FINANCIAL GROUP, et al.,**
        Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

        In a decision dated January 21, 2009, the United States Bankruptcy Appellate Panel

for the First Circuit reversed an order entered by this Court on June 4, 2008, dismissing the

adversary proceeding commenced by Willie Hamilton (the "Debtor") against Ralph

Appolon, d/b/a the Providence Financial Group, the Providence Financial Group, and

1

Epoch Realty, LLC (collectively, the "Defendants"), as well as this Court's refusal to grant relief to Candace Hamilton ("Hamilton"), one of the Debtor's two daughters.

The Debtor, who had filed a Chapter 13 case on January 7, 2004, died on November 9, 2007, approximately eight months after the commencement of the adversary proceeding. Hamilton was appointed administratrix on June 9, 2008, five days after the Court dismissed the adversary proceeding. The Court subsequently dismissed the main case on July 25, 2008.

In its decision, the Bankruptcy Appellate Panel directed this Court "to determine whether it should retain jurisdiction or dismiss the case without prejudice so that Hamilton may pursue her claims in another forum." Hamilton v. Appolon (In re Hamilton), 399 B.R. 717, 722 (B.A.P. 1st Cir. 2009). In a footnote, the panel cited several circuit court decisions affirming bankruptcy courts' retention of jurisdiction over adversary proceedings after dismissal of the bankruptcy cases to which they related. Id. at 722 n. 7 (citing Porges v. Gruntal & Co., Inc. (In re Porges), 44 F.3d 159, 163 (2d Cir. 1995); Querner v. Querner (In re Querner), 7 F.3d 1199, 1201-1202 (5th Cir. 1993); Carraher v. Morgan Elecs., Inc. (In re Carraher), 971 F.2d 327, 328 (9th Cir. 1992); Fidelity & Deposit Co. v. Morris (In re Morris), 950 F.2d 1531, 1535 (11th Cir. 1992); and Smith v. Commercial Banking Corp. (In re Smith), 866 F.2d 576, 580 (3d Cir. 1989)).

Following the decision of the Bankruptcy Appellate Panel, Hamilton filed, in the main case, a Motion for Relief from Order Dismissing Case. The Court's determination of whether to dismiss the adversary proceeding without prejudice or to retain jurisdiction

2

hinges, in part, on whether the Court should reopen the Debtor's closed Chapter 13 case. The Chapter 13 trustee has objected to the Motion for Relief from Order Dismissing Case.

## II. BACKGROUND

    A. <u>The Debtor's Chapter 13 case</u>

As noted above, the Debtor filed a Chapter 13 petition over five years ago on January 7, 2004. He filed his first Chapter 13 plan on January 7, 2004 and his first amended Chapter 13 plan on May 26, 2004. He filed a second amended Chapter 13 plan on July 8, 2004, and a third amended Chapter 13 plan, erroneously labeled Second Amended Chapter 13 plan, on December 17, 2004. The Court confirmed the Debtor's second amended plan on May 13, 2005. It required payments of $458.96 per month for 60 months, commencing on February 1, 2004.[1] Within approximately six weeks, the Chapter 13 trustee moved to dismiss the Debtor's case because the Debtor was over six months in arrears in his plan payments.[2] The trustee withdrew her motion on February 8, 2006.

On October 19, 2005, the Debtor filed his first post-confirmation plan. In that plan, the Debtor stated: "The plan is complete. This plan reflects the result of recent objections to claims which resulted in many claims being disallowed." The Debtor indicated that he intended to refinance his property to satisfy outstanding claims, including any outstanding tax liens.

---

[1] The plan provided for payment of mortgage arrears to Ameriquest Mortgage Company, the holder of a first mortgage, direct payments to that lender, and a 10% dividend to unsecured creditors.

[2] This was the Chapter 13 trustee's fourth motion to dismiss.

Just before the Debtor moved to modify his confirmed plan, Ameriquest Mortgage Company moved for relief from the automatic stay to foreclose a mortgage given by the Debtor and Ethel Hamilton, secured by property located at 7 Gladeside Terrace, Mattapan, Massachusetts (the "property").   On November 2, 2005, the Debtor filed a Motion to Refinance with CCO Mortgage Corp.

On November 10, 2005, the Debtor moved to withdraw his modified post-confirmation plan and filed, in its stead, a first amended post-confirmation plan.  That plan provided that the plan payment would be $15,955.46 payable from the refinancing transaction.  On February 22, 2006, the Court confirmed the Debtor's first amended, post-confirmation plan. The order provided that the term of the plan was reduced from 60 months to 22 months.

On April 11, 2006, the Chapter 13 trustee again moved to dismiss the Debtor's case, noting that the confirmed plan had expired in November by its terms.  Approximately two weeks later, on April 27, 2006, the Court granted Ameriquest Mortgage Company's motion for relief from the automatic stay, effective June 30, 2006.[3]

On April 28, 2006, after the expiration of his plan, the Debtor moved to employ a real estate broker for the purpose of selling the property.  He also filed a "Motion for Partial Relief from Order," namely the confirmation order dated February 22, 2006, noting that due to marital difficulties his wife had refused to participate in the refinancing

---

[3] Ameriquest Mortgage Company filed its motion on October 7, 2005.  The Court continued the hearing on the motion numerous times to afford the Debtor time to effectuate his plan.

transaction.  He asked the Court to permit him to make the lump sum payment required

under the confirmed plan on or before July 31, 2006.  The Chapter 13 trustee objected,

complaining that the Debtor had failed to file a further modified plan and requesting

monthly payments of $458.96 until the Debtor made the lump sum payment.  On June 22,

2006, the Court, at a hearing on the Motion for Partial Relief from Order, ordered the

Debtor to file an amended plan by July 6, 2006.

On July 7, 2006, the Debtor filed a second post-confirmation plan providing for a

term of "36 months unless completed sooner" and payments of $459 per month until his

residence was sold. In his plan, the Debtor disclosed a priority claim to the City of Boston

for water and sewer charges in the sum of $1,205, an administrative claim for attorney's

fees in the sum of $2,500, and an unsecured claim in the sum of $11,891.37 held by the City

of Boston Credit Union.

On October 30, 2006, the Court confirmed the second amended, post-confirmation

plan, increasing the term of the plan to 36 months and requiring a lump sum payment of

$13,853.56 on or around February 1, 2007.  To implement the plan, the effective date of

which was February 1, 2004, the Debtor moved to employ Derek Ebrecht and Village

Realty Group.  On November 29, 2006, he filed a Motion for Leave to Sell Estate Property

Free and Clear of Liens to an individual identified as Louis Pierre for $450,000, a price he

believed was sufficient to pay Ameriquest Mortgage Company's secured claim in full.

On January 11, 2007, the Court granted the Sale Motion.  One month later, on

February 11, 2007, the Debtor commenced an action against AMC Mortgage Servicing [sic]

for breach of contract, violation of the Fair Debtor Collection Practices Act for, *inter alia*,

misrepresenting the amount due from the Debtor in its proof of claim and payoff

statement, as well as for violation of Fed. R. Bankr. P. 2016.[4]  At the same time, the Debtor's

counsel filed a Report Regarding Sale of Property which took place on January 28, 2007.

He stated "[u]pon information and belief, the net proceeds of the transaction are being held

by the attorney for debtor's estranged wife pending further order of this Court or the

divorce court, as the case may be; undersigned counsel was unable to attend the closing."

He added: "Certain aspects of the transaction seem unusual to undersigned counsel, who

is investigating the matter and will supplement this report if needed."

On March 2, 2007, the Debtor commenced an action against Providence Financial

Group, Village Realty Group, and Epoch Realty LLC.  Over six months later, on October

19, 2007, he filed a Second Amended Complaint against the Defendants based upon

irregularities associated with the closing, including the identity of the buyer, the purchase

price, the recordation of the mortgage to Providence Financial Group in the amount of

$130,000 on November 6, 2007, and the payment of $92,823.67 to Providence Financial

Group at the January 28, 2007 closing.

On May 1, 2007, the Chapter 13 trustee again moved to dismiss the Debtor's case,

---

[4] Ameriquest Mortgage Company filed a proof of claim in the Debtor's case.
AMC Mortgage Services, Inc. was paid at the sale of the Debtor's property.  AMC
Mortgage Services, Inc. filed an answer to the complaint in Adv. P. No. 07-1044.
Although Ameriquest Mortgage Company's name appears on the mortgage attached to
the proof of claim it filed, Ameriquest Mortgage Services, Inc., in its answer, stated that
it filed the proof of claim and entered into a mortgage transaction with the Debtor.

noting that the plan expired by its terms at the end of January 2007 and that the balance due under the plan was approximately $17,066.56. The Debtor objected, asserting that the sale proceeds in the approximate sum of $92,000 were converted at the closing. After continuing the trustee's motion several times, the Court, on November 1, 2007, continued the trustee's motion generally pending disposition of the adversary proceeding. As noted above, Willie Hamilton died on November 9, 2007.

Hamilton moved, in the main case, to be substituted for her father pursuant to Fed. R. Civ. P. 25. In her Motion to Substitute, Hamilton represented that she was one of two children of Willie and Ethel Hamilton, who had divorced in 2007, and that her father did not have a will. The Chapter 13 trustee did not object to Hamilton's substitution in the adversary proceeding, but objected to her substitution as the debtor in the Chapter 13 case, referencing Fed. R. Bankr. P. 1016.

The Court scheduled a hearing on the Motion to Substitute for February 28, 2008. At counsel's request, the matter was continued until May 1, 2008. On April 28, 2008, Hamilton moved this Court to appoint her as adminstratrix pursuant to Mass. Gen. Laws ch. 193, § 1. Hamilton stated: "this Court has exclusive jurisdiction over property of the debtor, regardless of where located, 28 USC 1334(e) [sic], including certain property acquired post-petition, *see* Fed. R. Bank. Pro. 1007(h). Candace is unaware of any of such property acquired by the debtor." Hamilton noted, however, that the Debtor acquired a car. The Court notes that he also acquired causes of action against the Defendants in Adv. P. No. 07-1060. The Court denied the motion, stating that it lacked jurisdiction to appoint

7

an administrator.

On May 2, 2008, after the dismissal of the adversary proceeding against the Defendants, the Court denied Hamilton's motion to be substituted for the Debtor in the main case.  On July 10, 2008, the Court entered an order requiring a response, on or before July 25, 2008, showing cause why the Chapter 13 case should not be dismissed.

"Willie Hamilton, by his attorney," objected to the court's order to show cause, stating the following:

> [A]lthough the debtor died several months ago, his daughter, Candace, has been appointed administratrix of the debtor's estate, and she desires that the case continue in order to liquidate certain property of the estate consisting of a cause of action. That cause of action is set forth in Adversary Proceeding number 07-01060. Although the court dismissed the proceeding on procedural grounds, dismissal is on appeal. If the appeal is successful, the potential value of the cause of action is estimated at $90,000, which would be more than sufficient to pay the remaining amount due under Hamilton's chapter 13 plan. Although the cause of action accrued after the petition date, it relates to the court's order allowing Hamilton to sell his residence, and thus is a core proceeding within the court's jurisdiction.

> Accordingly, the debtor requests that the trustee's motion be denied without prejudice and/or that the bankruptcy case be suspended pending resolution of the adversary proceeding.

On July 25, 2008, the Court granted the Chapter 13 trustee's motion to dismiss and overruled the objection filed by Debtor's counsel.  The Court determined that the opposition interposed *by Debtor's counsel* did not constitute a valid defense to dismissal under 11 U.S.C. § 1307(c)(4) in view of the substantial arrearage in plan payments.  The Court also stated "there was substantial delay in the prosecution of two adversary proceedings and no stay pending appeal of the order dismissal." The Court also stated that

Hamilton was free to pursue any claims of the Debtor in state court.[5]

The trustee filed her Final Report and Account on September 11, 2008, listing obligations owed to, among other creditors, Ameriquest Mortgage Company, which had been paid $268,923.36,[6] according to the HUD-1 Settlement Statement submitted by counsel on February 11, 2007, and the City of Boston Credit Union.[7]

As noted above, the Debtor also filed a complaint against AMC Mortgage Servicing, Inc. That adversary proceeding was dismissed on June 3, 2008, and the Court, on June 13, 2008, denied the Motion filed by Debtor's Counsel to Reinstate the adversary proceeding. There was no appeal from that order.

B. The Adversary Proceeding

As noted above, the Debtor filed his complaint against the Defendants on March 2, 2007. He filed a second amended complaint on October 19, 2007 containing six counts:

---

[5] The Court notes that its order dated June 4, 2008 dismissing the adversary proceeding did not provide for dismissal with (or without prejudice). Hamilton filed her Motion to Substitute on January 21, 2008 before she was appointed administratrix on June 9, 2008, well over 90 days after service of a statement noting death. *See* Fed. R. Civ. P. 25, made applicable to adversary proceedings by Fed. R. Bankr. P. 7025.

[6] In its answer to the complaint filed against it by the Debtor, AMC Mortgage Servicing stated that it was paid this amount on February 2, 2007 following the closing. In addition to the payment of $92,823.67, the HUD-1, which Debtor's counsel attached to his Report filed on February 11, 2007, also showed satisfaction of two executions against the property, one in the amount of $9,429.27 to Lustig, Glaser & Wilson with respect to an execution obtained by N-Star Electric Co. (listed on amended Schedule F), and the other in the amount of $8,000 to Sears, Roebuck & Co. (unlisted as a creditor).

[7] The City of Boston Credit Union also filed a secured claim (no. 3) in the amount of $21,583.56. It subsequently amended that claim on November 3, 2004 and again on December 15, 2004, eliminating any deficiency.

Count I - Fraud, Deceit and/or Misrepresentation; Count II - Unjust Enrichment; Money

Had and Received, Unconscionability; Count III - Civil Conspiracy; Count IV - Breach of

Contract, Interference with Advantageous Relations; Count V - Chapter 93A; and Count

VI - Piercing the Corporate Veil. Between October 19, 2007 and January 21, 2008, there was

little activity in the case, except for the filing of answers by the Defendants. On January 21,

2008, Hamilton filed a Motion to Substitute herself as plaintiff, noting that she would be

seeking appointment as administratrix in the probate court. Appolon and Epoch Realty,

LLC objected, noting that Hamilton had not been appointed as administratrix. The Court

scheduled the Motion to Substitute for hearing in late February of 2008, but continued the

hearing to May 1, 2008 at Hamilton's request. In April of 2008, Appolon and Epoch Realty,

LLC moved to dismiss the adversary proceeding pursuant to Rule 25. On May 2, 2008, the

Court entered an order requiring counsel to the Debtor to obtain the appointment of an

administrator from the appropriate state court by June 2, 2008. The Court also scheduled

the Defendants' motion to dismiss for June 18, 2008. As noted, the Court dismissed the

adversary proceeding on June 4, 2008. At that time, there was no pretrial order on the

docket, and it does not appear that the parties engaged in any meaningful discovery.

## III. DISCUSSION

A. <u>The Motion for Relief from Order Dismissing Case</u>

The Court sustains the objection filed by the Chapter 13 trustee to the Debtor's

Motion for Relief from Order Dismissing Case. The history of the Debtor's Chapter 13 case

compels the Court to conclude that vacating the order of dismissal is unwarranted. In the

first place, the Debtor failed to make payments under his confirmed plan.  Because the

Debtor has died, he obviously does not have regular income and cannot make payments

under his confirmed plan, other than through a recovery from  the Defendants in Adv. P.

No. 07-1060 or from AMC Mortgage Servicing, Inc. in Adv. P. No. 07-1044.[8]

The duration of the Debtor's confirmed plan is computed from the date the first

payment was due under the original confirmed plan, i.e., February 1, 2004. *See* 11 U.S.C.

§ 1326(a)(1); <u>In re Musselman</u>, 341 B.R. 652, 655-56 (Bankr. N.D. Ind. 2005).[9]  Accordingly,

the Debtor's plan has expired both by its stated term and under bankruptcy law.  The

Debtor, through Hamilton, is barred from filing another post-confirmation plan by

operation of section 1322(d) ("The plan may not provide for payments over a period that

is longer than three years, unless the court, for cause, approves a longer period, but the

court may not approve a period that is longer than five years." 11 U.S.C. § 1322(d)).[10]

---

[8] That adversary proceeding was dismissed on June 3, 2008.  The Court denied
the Motion for Relief from Order pursuant to which the attorney for Willie Hamilton
sought to reinstate the adversary proceeding on June 13, 2008.  No appeal was filed
with respect to the dismissal of that adversary proceeding.

[9] The court stated:

Reading §§ 1322(d), 1325(b)(1)(B), 1326(a)(1) and 1329(c) all together, the
three- and five-year periods would be counted from the date that the first
payment was due from the debtor, which would ordinarily be within 30
days after  the plan is filed, absent court order to the contrary. 3 Keith M.
Lundin, *Chapter 13 Bankruptcy*, 3d Ed. § 200.1 at 200-2 (2000 & Supp.2004).

<u>Id.</u>

[10] The Debtor's case was filed before the effective date of the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005.

Moreover, the only creditor of the Debtor, the City of Boston Credit Union, has taken no steps to assert its rights, except to file proofs of claim.  In view of the expiration of the plan, the positions of the trustee, and the absence of creditor interest, the Court shall enter an order denying the Motion for Relief from Order Dismissing Case.

B. The Adversary Proceeding

1. Case Law

Resolution of the issue of whether to dismiss the adversary proceeding without prejudice or retain jurisdiction requires consideration of the cases cited by the Bankruptcy Appellate Panel, as well as the status of the Debtor's Chapter 13 case.  In its decision, the panel recognized that the complaint Hamilton now seeks to pursue as administratrix "sounded in the state common law of torts and was, thus, a 'related to' proceeding - - as opposed to a case 'under title 11' or a matter that 'arises in' or 'arises under' the Bankruptcy Code."  In re Hamilton, 399 B.R. at 720.

In Porges v. Gruntal & Co. Inc. (In re Porges), 44 F.3d 159 (2d Cir. 1995), the most recent of the cases cited by the panel, the Second Circuit considered an appeal from a bankruptcy court's decision to retain jurisdiction over an adversary proceeding that arose when a creditor of the debtor sought indemnification and contribution by filing a proof of claim for that sum, as well as sums due under promissory notes.  The debtor objected to the proofs of claim and commenced an adversary proceeding pursuant to 11 U.S.C. §

502(b).[11]  The bankruptcy court conducted a trial in the adversary proceeding and found

in the creditor's favor, directing the creditor's attorney to submit proposed findings of fact

and conclusions of law within approximately three weeks.  One day before the due date

for the proposed findings, the debtor moved to dismiss his Chapter 13 case.

In affirming the decision of the district court, which had affirmed the bankruptcy

court decision to retain jurisdiction, the Second Circuit, referencing many of the cases cited

by  the Bankruptcy Appellate Panel in Hamilton, stated:

> We join several other circuits in adopting *the general rule that related
> proceedings ordinarily should be dismissed following the termination of the
> underlying bankruptcy case. This general rule favors dismissal because a bankruptcy
> court's jurisdiction over such related proceedings depends on the proceedings' nexus
> to the underlying bankruptcy case. See* In re Querner, 7 F.3d 1199, 1201-02 (5th
> Cir.1993); In re Morris, 950 F.2d 1531, 1533 (11th Cir.1992); In re Smith, 866
> F.2d 576, 580 (3d Cir.1989). Notwithstanding this general rule, however,
> nothing in the Bankruptcy Code requires a bankruptcy court to dismiss
> related proceedings automatically following the termination of the
> underlying case. *See, e.g.,* In re Querner, 7 F.3d at 1201-02; In re Carraher, 971
> F.2d 327, 328 (9th Cir.1992) (per curiam); In re Morris, 950 F.2d at 1534; In re
> Roma Group, 137 B.R. 148, 150 (Bankr.S.D.N.Y.1992); In re Pocklington, 21
> B.R. 199, 202 (Bankr.S.D.Cal.1982). Indeed, section 349 of the Bankruptcy
> Code authorizes bankruptcy courts to alter the normal effects of the dismissal
> of a bankruptcy case if cause is shown. *See* 11 U.S.C. § 349 (setting forth
> consequences of dismissal "unless the court, for cause, orders otherwise").
> Accordingly, we hold that the dismissal of an underlying bankruptcy case
> does not automatically strip a federal court of jurisdiction over an adversary

[11] Specifically, Porges [the debtor] argued that Gruntal [the creditor] could not
obtain indemnification of the amount paid to Breen [a client] because the firm's
improper supervision made it wholly liable for his activities. Porges also objected to
Gruntal's claims for repayment of the promissory notes, asserting that Gruntal breached
the employment contract of which the promissory notes were an essential part. Finally,
Porges filed counterclaims against Gruntal alleging, inter alia, that Gruntal breached his
employment contract and wrongfully terminated him.

13

proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court or the district court, depending on where the adversary proceeding is pending.

In re Porges, 44 F.3d at 162 (emphasis supplied).   The court further stated:

> In this appeal the district court, following several decisions in other circuits, analogized the bankruptcy court's exercise of jurisdiction over the adversary proceeding to a district court's jurisdiction over pendent state claims following dismissal of all federal claims. *See, e.g.*, In re Carraher, 971 F.2d at 328; In re Smith, 866 F.2d at 580. In such cases a district court is not required to dismiss the state claims, although dismissal of such claims is the general rule. *See* DiLaura v. Power Authority of New York, 982 F.2d 73, 80 (2d Cir.1992). Rather, a court must consider four factors in determining whether to continue to exercise jurisdiction: judicial economy, convenience to the parties, fairness and comity. *See* Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); DiLaura, 982 F.2d at 80.

Porges, 44 F.3d at 162-63 (footnote omitted).[12]

---

[12] The court added:

> The bankruptcy court considered these factors and properly concluded that it possessed jurisdiction over the adversary proceeding following the dismissal of Porges' bankruptcy case. Porges, 157 B.R. at 215. The court had conducted a trial on all contested issues and had issued a decision, and the matter awaited only the filing of findings of fact and conclusions of law and the entry of a judgment. To have declined jurisdiction at that stage would have served no useful purpose, and would have wasted the resources already invested by the parties and the court. *See* In re Smith, 866 F.2d at 580; *see also* In re Roma Group, 137 B.R. at 150-51; In re Stardust Inn, 70 B.R. 888, 890-91 (Bankr. E.D. Pa. 1987). Further, it would be unfair to compel Gruntal to relitigate the matter, particularly where, as here, a debtor voluntarily submitted himself to the jurisdiction of the bankruptcy court and thereby forced a creditor to litigate its claims in that forum. *See* In re Pocklington, 21 B.R. at 202; In re Roma Group, 137 B.R. at 151. Accordingly, we find that the above grounds amply support the bankruptcy court's decision to retain jurisdiction over Porges' adversary proceeding following the dismissal of his bankruptcy petition.

14

In sum, case law requires this court to consider 1) judicial economy, 2) convenience to the parties, 3) fairness, and 4) comity in evaluating whether to retain jurisdiction or dismiss without prejudice the adversary proceeding commenced by the Debtor against Appolon and others.  Before doing so, this Court also must consider the status of both the adversary proceeding and the main Chapter 13 case.

  2. <u>Analysis</u>

Unlike the situation in <u>In re Porges</u>, this Court did not conduct a trial on the merits of the Debtor's second amended complaint, which was filed eight months after the commencement of the adversary proceeding and nine months after the sale of the property which gave rise to the causes of action against the Defendants.  The merits of the adversary proceeding have not been reached.  Furthermore, applicable statutes of limitation will not bar Hamilton from bringing claims against the Defendants in the appropriate state court forum.[13]  Thus, judicial economy does not dictate that this Court should retain jurisdiction over the adversary proceeding.

---

144 F.3d at 163.

[13] The statute of limitations for "actions of tort, actions of contract to recover for personal injuries, and actions of replevin" is three years.  *See* Mass. Gen. Laws ch. 260, § 2A.  The statute of limitations for "[a]ctions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied" is six years. *See* Mass. Gen. Laws ch. 260, § 2.  There is a four year statute of limitation period under Ch. 93A. *See* Mass. Gen. Laws ch. 260 § 5A.  Finally, it would appear that there is a three year statute of limitations for the tort of civil conspiracy. *See* <u>Kadar Corp. v.. Milbury</u>, 549 F.2d 230, 234-35 (1st Cir.1977).

The Court notes that the Debtor's former spouse and his two children have interests in his probate estate.  Indeed, the attorney for the Debtor's former spouse was holding proceeds from the sale of the property.  With respect to the bankruptcy estate, the Chapter 13 trustee has objected to Hamilton's request to vacate dismissal of the Debtor's Chapter 13 case.  Because the Court has determined that vacating dismissal of the Debtor's Chapter 13 case is unwarranted, indeed prohibited under applicable law, the Court finds that comity favors dismissal of the adversary proceeding without prejudice, so that Hamilton's claims may be considered by the appropriate state court with any recoveries against the Defendants distributed under the supervision of the probate court.  The Court also notes that the Debtor's former spouse might be a necessary party as her signature and that of the Debtor appeared on the HUD-1 Settlement Statement, and it is likely she would be called as a witness.

The Court also finds that the convenience of the parties and fairness to them do not weigh heavily in favor of either Hamilton or the Defendants.  The adversary proceeding was protracted, in part, because of the number of times the Debtor amended his complaint and, in part, because of the delay in obtaining the appointment of Hamilton as administratrix.  Although the action is pending here, it can be refiled in the state court by Hamilton without the impediment of Fed. R. Civ. P. 25 and prosecuted there without undue delay.

The causes of action articulated by the Debtor arise under state law and are not barred by applicable statutes of limitation.  Because the action against the Defendants is

16

"related to" the bankruptcy case, this Court, absent the parties' consent, would be required to submit proposed findings of fact and conclusions of law to the district court, *see* 28 U.S.C. § 157(c)(1). Thus, even assuming this Court could conduct a trial sooner than the appropriate state court, there would be delay incident to the district court's ruling on any proposed findings of fact and rulings of law.

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter an order amending its order of June 4, 2008 to reflect dismissal of the adversary proceeding *without* prejudice. The Court shall also issue an order denying Hamilton's Motion for Relief from Order Dismissing Case.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 15, 2009
cc: Carolyn Bankowski, Esq., David G. Baker, Esq., Stephen E. Shamban, Esq., Robert W. Stowe, Esq., Ralph Appolon,

17